**DEFENDERS OF WILDLIFE, Plaintiff,**

v.

**Manual LUJAN, Jr., Secretary of the Interior, et al., Defendants,**

**Mountain States Legal Foundation, et al., Intervening Defendants.**

**Civ. A. No. 91–1993.**

United States District Court, District of Columbia.

May 19, 1992.

Brian B. O'Neill, Anne V. Simonette, Minneapolis, Minn., for plaintiff.

Peter H. Van Tuyn, U.S. Dept. of Justice, Washington, D.C., for Federal defendants.

William Perry Pendley, Steven J. Lechner, Denver, Colo., John J. Rademacher, Richard L. Krause, Park Ridge, Ill., for intervening defendants.

## MEMORANDUM

GESELL, District Judge.

Defenders of Wildlife asks the Court to require the Secretary of the Interior immediately to implement an existing Recovery Plan for the conservation and survival of the gray wolf (the Northern Rocky Mountain Wolf Recovery Plan), a species that has been listed as endangered pursuant to the Endangered Species Act, 16 U.S.C. §§ 1531–43. In particular, plaintiff seeks to have the Secretary implement the portion of the Recovery Plan that calls for the wolf to be introduced into Yellowstone National Park. The Secretary and the defen-dant-intervenors have each filed motions to dismiss, which have been fully briefed.

The Recovery Plan designated three areas in which the wolf should be conserved. In two of those areas, namely, regions in northwestern Montana and central Idaho, the Plan contemplated that natural recovery may be sufficient to protect the wolf. However, the Plan also determined that physical reintroduction of the wolf would be necessary for recovery in Yellowstone National Park. The Plan called for placing breeding pairs in this wilderness-forest area, rather than relying on migration from the north or west. Intervenors, who represent groups that graze sheep and cattle on these public lands, as well as various other interests, viewed the proposal unfavorably and Congress has become involved in the process.

In 1988, the Senate–House Interior Appropriations Committee noted that reintroduction of the gray wolf into Yellowstone was desirable and encouraged various studies into management and other problems that had arisen due to opposition by some affected groups. *See* Wolf Management Committee, Reintroduction and Management of Wolves in Yellowstone National Park and the Central Idaho Wilderness Area, Def.Ex. 2, at 4. A Report to Congress by the Wolf Management Committee was developed and submitted. *See id.* at 3.

The Recovery Plan itself has never been an action document. *See* Recovery Plan, Def.Ex. 1 at iv. It left open different approaches and contemplated that when an agency or group made specific proposals for achieving a particular objective of the plan, there would be a need for further study. *See* Recovery Plan at iv. Indeed, from the outset, the Fish and Wildlife Service noted that only when an actual action plan was in hand could the environmental impact of the recovery effort in Yellowstone be determined. *See id.*

In a rider to the 1992 Appropriations Act, the controversial program to restock Yellowstone National Park was terminated by Congress, at least for the immediate future. The 1992 Appropriations Act rider

provided that "none of the funds in this Act may be expended to reintroduce wolves in Yellowstone National Park and Central Idaho." 1992 Appropriations Act, Pub.L. No. 102–154, 105 Stat. 970, 993–94 (1991). At the same time, the Senate–House Appropriations Report recognized the need for an environmental study, as originally noted in the Recovery Plan itself, *see* Recovery Plan at v, and specified that an environmental impact statement ("EIS") under NEPA be available by mid–1993. *See* H.R.Rep. No. 256, 102d Cong., 1st Sess., at 16–17, 23–24 (1991).

Plaintiff's attempt by this lawsuit to require implementation of those aspects of the Recovery Plan dependent on the funds now withheld under the 1992 Appropriations Act is thus temporarily and perhaps permanently moot. The complaint was prematurely filed and must be dismissed, without prejudice. Clearly, as plaintiff itself concedes, the Court cannot issue an affirmative injunction when an act of Congress has specifically deprived the Secretary of the funds that would be necessary to comply with such an injunction. Nor is there any basis for this Court to accept jurisdiction under the Declaratory Judgment Act. Congress has withdrawn funds for fiscal 1992 for placing breeding wolf pairs into Yellowstone. No current controversy therefore exists between the plaintiff and the Secretary.

Plaintiff's suggestion that the Court nonetheless should declare that, as a legal matter, an EIS under NEPA may not stand as a pre-requisite to implementation of the Recovery Plan overlooks two undisputed facts that set this case apart from many similar cases. First, Congress has requested that an EIS be prepared by mid–1993; and second, the Fish and Wildlife Service has stated in the Recovery Plan itself that the best method for managing any wolves re-introduced into Yellowstone can not be determined except in the light of whatever concrete proposal is developed at some indefinite time in the future. *See* Recovery Plan, at v-vi. It makes no difference that an EIS is perhaps unnecessary or not legally required, as plaintiff argues, because Congress has directed that one be prepared. In any event, a declaration at this time would be purely advisory and would not resolve any dispute. The Declaratory Judgement statute is thus unavailable to bolster plaintiff's claims.

Finally, plaintiff would have the Court hold the case to see what a new Interior Appropriations Committee will do once the rider's ban on funding expires. There obviously is no basis for conjecture concerning what will be the views of a new Congress come November. The Secretary has received earmarked funds to put together a draft EIS by mid–1993, and even if funds to go further were appropriated and the congressional desire for an EIS removed, it would still be necessary under the terms of the Recovery Plan itself to appraise the environmental effects of any proposal authorized. A United States District Court is not a file cabinet in which to leave unfinishable business that might be brought alive at a later date, depending on the outcome of possible events that may never occur.

The defendants' motions to dismiss are granted and the complaint is dismissed, without prejudice. An Order is filed herewith.

### ORDER

For reasons set forth in the Court's Memorandum filed herewith, the motions of defendants and intervening defendants to dismiss are granted and the complaint is dismissed, without prejudice. Plaintiff's Motion for Summary Judgment is denied as moot.

SO ORDERED.